UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KEVIN D. APPLEGATE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 1:05cv41 |
| ) | |
| GENERAL ALUMINUM and/or ) | |
| GENERAL ALUMINUM ) | |
| MANUFACTURING COMPANY, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the court on motion for summary judgment filed by the defendant General Aluminum and/or General Aluminum Manufacturing Company ("General Aluminum"), on November 23, 2006. The plaintiff, Kevin D. Applegate ("Applegate"), filed his response on February 13, 2006, to which General Aluminum replied on February 28, 2006. Applegate filed a sur-reply on March 9, 2006.

Also before the court is a "Motion to Strike Portions of Affidavit of Kevin D. Applegate", filed by General Aluminum on February 28, 2006. Applegate responded to the motion on March 7, 2006, to which General Aluminum replied on March 9, 2006.

For the following reasons, both motions will be denied.

Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his

opponent's claim.  Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir. 1990).  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff."  Id.  In Re Matter of Wildman, 859 F.2d 553, 557 (7th Cir. 1988); Klein v. Ryan, 847 F.2d 368, 374 (7th Cir. 1988); Valentine v. Joliet Township High School District No. 204, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322 (7th Cir. 1992)(quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

      Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, Celotex, 477 U.S. at 323.  The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment.  Goka v. Bobbitt, 862 F.2d 646, 649 (7th

Cir. 1988); Guenin v. Sendra Corp., 700 F. Supp. 973, 974 (N.D. Ind. 1988); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. See, Waldridge v. American Hoechst Corp. et al., 24 F.3d 918 (7th Cir. 1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. Anderson, 477 U.S. at 249-251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. Id. The issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; First National Bank of Cicero v. Lewco Securities

3

Corp., 860 F.2d 1407, 1411 (7th Cir. 1988).  The non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  Id.  A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-252.  Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate.  Mason v. Continental Illinois Nat'l Bank, 704 F.2d 361, 367 (7th Cir. 1983).

Discussion

Applegate, who began his employment with General Aluminum on or about April 17, 2000, has filed this action against General Aluminum alleging violations of the Family Medical Leave Act ("FMLA").  General Aluminum seeks summary judgment on all of Applegate's claims, asserting that the undisputed evidence shows that Applegate was fired for excessive absenteeism, and that General Aluminum did not violate the FMLA.

The defendant recites the following facts which it asserts are undisputed.  General Aluminum is in the business of manufacturing and distributing a variety of component parts to the automotive industry.  Abernathey Aff. ¶ 3.  Tom Abernathey is the General Manager of the Fremont, Indiana General Aluminum Plant.  He has held this position since 1985.  Abernathey Aff. ¶ 2.  Applegate was employed by General Aluminum from April 17, 2000 until November 2, 2004.  Price Aff. ¶ 4, ¶ 16.  During Applegate's employment, his supervisor was Mike Weisenfelder ("Weisenfelder") and the General Manager was Tom Abernathey ("Abernathy").  Applegate Dep. p. 12.  During the time of Applegate's employment (and presently), the General

4

Aluminum Human Resources Manager was Judy Price ("Price").  Price Aff.  ¶ 1.

General Aluminum employees do not have a union.  The employees are governed by a set of Plant Rules and Regulations that include an attendance policy.  Abernathey Aff.  ¶ 4, Ex.  A.  General Aluminum's Attendance Policy states:

> [I]f you know in advance that you will be absent from work, you must notify your Supervisor as far in advance as possible.  If you do not know in advance, notify your Supervisor or the plant Office at least thirty (30) minutes prior to the beginning of your shift on the day of the absence. . . if you are absent from work for any reason, report to your Supervisor before you scan your card and return to work.  Although we understand that you have to be absent at times, excessive absence is unacceptable.  Excessive absence, excused or not, can be cause for disciplinary action and may result in discharge.

The policy also provides a progressive system of discipline for absences.  The policy states: "five (5) occurrences in a twelve (12) month period [will result in a] written warning.  Six (6) occurrences in a twelve (12) month period [will result in a] disciplinary layoff not to exceed three (3) working days.  Seven (7) occurrences in a twelve (12) month period [will result in a ] disciplinary layoff not to exceed ten (10) working days.  Eight (8) occurrences in a twelve (12) month period [will result in] discharge."  Abernathey Aff.  ¶ 4, Ex.  A.

Applegate reviewed these policies on April 18, 2004 with Price.  Price Aff.  ¶ 5, Ex.  B.  Applegate is able to read the English language and had seen a copy of the Plant Rules and Regulations, including the attendance policy.  Applegate Dep.  p.  30.

General Aluminum has an FMLA policy.  Price Aff.  ¶ 15.  The FMLA policy is posted outside the employee break room so that all employees may view the procedures for requesting FMLA leave.  Price Aff.  ¶ 15.

From 2000 through 2003, Applegate had attendance problems and received repeated

Notices of Disciplinary Absences and disciplinary leaves.

In 2000, Applegate was absent from work 10 days. Price Aff. ¶ 6, Ex. A. In 2001, Applegate was absent from work 19 days. Price Aff. ¶ 7, Ex. A. In 2001, Applegate left work early on five separate days. Price Aff. ¶ 8, Ex. A. In 2002, Applegate was absent from work 27 days. Price Aff. ¶ 9, Ex. A. In 2002, Applegate left work early on four separate days. Price Aff. ¶ 10, Ex. A. In 2003, Applegate was absent from work 17 days. Price Aff. ¶ 11, Ex. A. In 2003, Applegate left work early on four separate days. Price Aff. ¶ 12, Ex. A. In 2004, Applegate was absent from work 19 days, Price Aff. ¶ 13, Ex. A. In 2004 Applegate left work early on five separate days. Price Aff. ¶ 14, Ex. A.

. On June 28, 2004, after a week of unexcused absences, Applegate was put on 60 days probation for excessive absences. The Notice of Disciplinary Action form stated:

> Reviewed Kevin's attendance record with him and explained that the company rules on attendance state: "although we understand that you have to be absent at times, excessive absence is unacceptable. Excessive absence, excused or not, can be cause for disciplinary action and may result in discharge." Because of Kevin's excessive absences during the past 12 months, Kevin will be placed on a 60 [day] calendar probation where any absences and excess of one tardy will result in termination. The period will be June 28, 2004 through August 26, 2004. Zero tolerance on absences.

Applegate Dep., Ex. M.

This probationary period was successfully served without any absences. Applegate took FMLA leave from September 13, 2004 through October 26, 2004. Price Aff. ¶ 17, Ex. A. Applegate was released from his physician on October 26, 2004 and returned to work on October 27, 2004. Applegate Dep, p. 15. Applegate testified that he felt capable of returning to work on October 27, 2004. Applegate Dep., p. 15. On October 27, 2004, Applegate was restored to the

6

same position he held prior to his FMLA leave.  Price Aff.  ¶ 17.

On October 27, 2004, Applegate requested a shift change and completed a "bump slip" requesting transfer from second shift to first shift.  Applegate Dep., p. 50, Ex. U.  The first shift at General Aluminum begins at 7:00 a.m.  Weisenfelder Aff.  ¶ 3.  The second shift at General Aluminum begins at 3:00 p.m.  Weisenfelder Aff.  ¶ 4.

On October 28, 2004, Applegate was put on 120 days probation for excessive absenteeism, even though he had been on FMLA leave and had not acquired any unexcused absences since June 25, 2004.  In fact, Applegate had worked from June 28, 2004 to September 10, 2004 without missing any days or leaving early.  The October 28, 2004 Notice of Disciplinary Action stated, "During this period any absence may result in disciplinary action up to and including discharge.  Probationary period will begin October 28, 2004."  Weisenfelder Aff., ¶ 8, Ex. B.  On October 28, 2004, at 5:00 p.m., approximately one hour after he was placed on probation, Applegate told a co-worker, Brent Cook ("Cook") that he was not feeling well and that he was going to return to the doctor.  Applegate Dep. p., 16.  Applegate then left the plant, at 7:00 p.m. before the conclusion of his shift.  Applegate Dep. p. 16-17.  While leaving the plant, Applegate state he wanted to take October 29, 2004 off as a floating holiday.  Applegate Dep. p. 16.  This request was granted.  Price Aff. ¶ 20, Ex. A.

Applegate was scheduled to work November 1, 2004.  Weisenfelder Aff. ¶ 9.  On November 1, 2004, Applegate was absent from work and failed to call thirty minutes prior to the start of what he believed his shift to have been (second shift).  Weisenfelder Aff., ¶ 10. Applegate believes that he called General Aluminum on November 1, 2004, at approximately 3:30 p.m.  Applegate reported he had seen his physician that day and asked to what shift he was

7

to report November 2, 2004.  Applegate Dep., p. 18-19.  On November 1, 2004, Weisenfelder did not receive Applegate's voice mail message until 5:30 p.m.  Weisenfelder Aff., ¶ 11.  Weisenfelder called Applegate's cell phone and left a voice mail message instructing Applegate to report to first shift November 2, 2004.  Weisenfelder Aff. ¶ 11.  On November 2, 2004, General Aluminum terminated Applegate's employment, allegedly for his violations of the attendance policy and his probation.  Abernathey Aff.  ¶ 7, Ex.  C.

In his present lawsuit, Applegate claims that he was terminated in retaliation for exercising his FMLA rights.  Applegate asserts that General Aluminum's 120 day probation period was "bogus", and was a ruse to fire him after taking an extended FMLA leave (September 13, 2004 through October 27, 2004).

The court will first briefly discuss General Aluminum's motion to strike portions of Applegate's affidavit.  General Aluminum claims that paragraphs 2, 3, 5, 6, 10, 13, 15 and 17 of the affidavit contradict Applegate's prior, sworn deposition testimony.  General Aluminum also contends that paragraphs 7 and 14 are irrelevant. Applegate, however, insists that his affidavit merely explains his deposition testimony and is not contradictory.  A review of the affidavit reveals that all of the paragraphs that General Aluminum objects to are irrelevant to the motion for summary judgment.  The paragraphs at issue discuss Applegate's various absences in the years 2000 to 2004, his explanation as to why he was absent, whether the absences should have been excused or considered FMLA leave, etc.  As will be seen below, the court has focused its inquiry on the time period immediately prior to Applegate's extended FMLA leave, as well as the events that occurred upon his return from FMLA leave.  Thus, Applegate's affidavit is irrelevant to this court's ruling on the motion for summary judgment.  Therefore General

8

Aluminum's motion to strike will be denied as moot.

In support of its motion for summary judgment, General Aluminum first argues that its decision to terminate Applegate's employment was a legitimate, non-discriminatory personnel decision, not a discriminatory violation of law.  General Aluminum maintains that Applegate had a history of frequent absences (including a pattern of consecutive absences) and violations of company policy and that the only role played by the FMLA in Applegate's employment history is that he had taken FMLA leave on two occasions prior to his termination.   General Aluminum summarizes Applegate's poor attendance by noting that in roughly four and one half years, Applegate missed ninety-two days of work, exclusive of vacation days, bereavement, work shut downs, and FMLA leaves.

General Aluminum recites the following facts which it asserts shows that Applegate was terminated as a result of his chronic violations of the attendance policy.  In September, 2004, Applegate requested FMLA leave due to dizziness.  His request for leave was granted and he was off on FMLA leave from September 13, 2004, through October 26, 2004.  On October 26, 2004, Applegate was released from his physician to return to unrestricted duty and his FMLA leave concluded.

On Wednesday, October 27, 2004, Applegate returned to work from FMLA leave. General Aluminum restored Applegate to the same position he held before his leave and regarded him as a regular, full-time employee.  On October 27, 2004, Applegate requested that he be allowed to change his hours of employment from first shift to second shift.

On October 28, 2004, at approximately 5:00 p.m., Applegate was counseled by his supervisor, Mike Weisenfelder, and placed on probation for 120 days.  The Notice of

9

Disciplinary Action, which Applegate acknowledged he received, but refused to sign, states, "... is placed on 120 calendar day probation.  During this period any absence may result in disciplinary action up to and including discharge.  Probationary period will begin10/28/04."

One hour after he was notified that he was being placed on probation, Applegate left the plant.  He told Cook, a fellow employee (and the lead man), that he wasn't feeling well.  He also told Cook that he wanted to take the next day, Friday October 29, 2004, as a floating holiday, so that he could go to the doctor.  Applegate's request was granted.

Applegate went to see his doctor on November 1, 2004.  Applegate states that on that date he called General Aluminum's office at about 3:30 p.m. as soon as he left his doctor's office.  Applegate informed the office that he had seen his doctor, who had switched his medication, and he asked which shift he was supposed to work the next day, November 2, 2004.  Weisenfelder's message to Applegate was that he was to report on first shift.  When Applegate returned to work on November 2, he was terminated for the November 1 "no call- no show".

In response to the motion for summary judgment, Applegate alleges that both the 120 day probation and his termination were in retaliation for his taking extended FMLA leave.  Applegate further claims that General Aluminum intentionally failed to inform him that his shift change (to first shift) had been confirmed.  Applegate claims that he was entitled to be absent on November 1 because he saw a doctor on that date and, on November 2, 2004, provided the doctor's slip to General Aluminum.  Moreover, Applegate's physician faxed the FMLA paperwork to General Aluminum on November 3, 2004, and November 1, 2004 was covered as a date that Applegate needed FMLA leave.

Applegate alleges that he has raised an inference of discrimination/retaliation by virtue of

10

the fact that he was placed on 120 day probation the day after he returned from extended FMLA leave, that he was not informed of his shift change and thus did not know to call in prior to first shift on November 1, 2004, that he did call in as soon as he left his physician's office, that he presented a doctor's slip to General Aluminum for November 1, 2004, and that his doctor provided FMLA paperwork indicating that Applegate needed FMLA leave on November 1, 2004.

In light of the sequence of events in this case, the court finds that summary judgment must be denied. While General Aluminum has made much of Applegate's absences from 2000 through 2004, if one looks at the time period immediately prior to Applegate's 2004 FMLA leave, it appears that Applegate's attendance had actually been improving. In 2004, Applegate missed three days in January (all unexcused absences), one day in March (leave of absence), three days in April (two unexcused absences and one emergency), took medical leave from April 28 through May 6, took two bereavement days from May 24 through May 26, and missed 5 days in June (all unexcused absences). Also, Applegate left early on 4 days (April 7, April 16, April 20, October 10). So it appears from the record that Applegate had fairly good attendance from the end of April until the time he took his extended FMLA leave beginning September 13, 2004. Thus it is somewhat puzzling why General Aluminum felt the need to place Applegate on 120 day "zero tolerance" probation on his first day back from FMLA leave, October 28, 2004. Additionally, from the facts in the record at this point, a reasonable inference is that Applegate was doing the best he could to keep General Aluminum informed as to his medical status and ability to work. This inference is bolstered by the fact that Applegate actually called in (late) on the date he was cited as being "no call, no show", was told to return to work on first shift on

November 2, presented a doctor's slip when he returned to work on November 2, yet was terminated on November 2.

While a jury may ultimately believe that General Aluminum had a legitimate basis for terminating Applegate, a reasonable jury could also find, as Applegate alleges, that he was placed on probation and then terminated in retaliation for his extended FMLA leave. <u>King v. Preferred Tech. Group</u>, 166 F.3d 887, 891 (7th Cir. 1999). Therefore, summary judgment must be denied.

<u>Conclusion</u>

Based on the foregoing, General Aluminum's motion for summary judgment is hereby DENIED. Further, General Aluminum's motion to strike is hereby DENIED AS MOOT.

Entered: March 30, 2006.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court